Noble H. SAPPINGTON, Respondent,

v.

Betty MILLER, Appellant.

No. WD 44270.

Missouri Court of Appeals, Western District.

Jan. 14, 1992.

---

**3.** The transcript reported him to have said    "called."

Larry Delano Coleman, Kansas City, for appellant.

Thomas C. Fincham, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and SHANGLER and TURNAGE, JJ.

PER CURIAM.

This is an appeal from a decree of specific performance ordering the appellant Miller to carry out a settlement agreement. She contends that the settlement agreement is unenforceable because it violates the Statute of Frauds, and that the trial court erred in allowing her former attorney to testify at trial concerning his representation of Miller. The judgment is affirmed.

In March of 1985, the respondent Sappington filed suit to rescind a deed which he had conveyed to his stepdaughter Miller. The deed in question gave appellant a tenancy-in-common interest in a piece of residential property which respondent had owned with his late wife. At approximately the same time, the appellant filed a separate action against Sappington seeking a partition and sale of the disputed property. In both actions, which were later consolidated for trial, respondent's counsel was Michael J. Svetlic, and appellant's counsel was Frank Smith.

Following settlement negotiations, Svetlic prepared a document formalizing an oral settlement agreement which was reached by Svetlic and Smith. According to the settlement document, the appellant was to execute a quitclaim deed conveying her interest in the property back to respondent. In return, the respondent was to give the appellant an $8,000.00 promissory note and deed of trust. However, appellant never signed the settlement document, and the proposed transfer of money and the quitclaim deed never took place.

Consequently, respondent filed a petition for specific performance of the oral settlement agreement. Smith as Miller's former lawyer was called as a witness at the trial of the specific performance action, where he testified that he had conducted settlement negotiations with Svetlic, and that the two attorneys had reached an oral agreement settling the parties' claims. Smith also testified the appellant had expressly given him the authority to enter into the settlement negotiations, and that appellant expressly agreed to the specific settlement reached by the attorneys. However, Smith testified, appellant later changed her mind and refused to sign the document.

Svetlic also testified at the trial of the specific performance action, and stated that he and Smith reached an oral settlement agreement on the weekend before the trial was scheduled to begin. Svetlic further testified that, on the date of the trial, he and Smith appeared before the trial judge and informed him that the case was settled. Svetlic also testified that, approximately one month later, both cases were dismissed with prejudice by the trial court.

Following the trial, the trial court issued a decree of specific performance ordering both parties to carry out the terms of the settlement agreement reached between Smith and Svetlic. Appellant's counterclaim for a partition of the property was denied.

As her first point on appeal, the appellant claims the oral settlement agreement reached by Smith and Svetlic is unenforceable because it violates the Statute of Frauds. Therefore, she argues, the trial court erred in ordering the specific performance of that agreement.

The Statute of Frauds, § 432.010, RSMo 1986, provides that no action shall be brought to charge any person "upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them" unless the agreement upon which the action rests is "in writing and signed by the party to be charged." An oral contract to convey land falls within the literal ambit of the Statute of Frauds and so will not be enforced at law. *Gegg v. Kiefer*, 655 S.W.2d 834, 837 (Mo.App.1983).

A compromise settlement is a contract, and must be in writing if the subject matter of the compromise is within the Statute of Frauds. *McPherson Redevelopment Corp. v. Shelton*, 770 S.W.2d 448, 451 (Mo.App.1989). In determining whether the Statute of Frauds is applicable to a compromise settlement, the courts are concerned with the intended effect of the compromise, and not with the question of whether the parties' antecedent claims are based on matters governed by the Statute of Frauds. *Id.* In the case at bar, the intended consequence of the settlement agreement was that appellant would convey her interest in the disputed property to respondent in exchange for an $8,000.00 promissory note and deed of trust. This transaction is governed by the terms of the Statute of Frauds.

However, despite the strict terms of the Statute of Frauds, equity will enforce an oral contract to convey real estate

where one party has partially performed or has done other acts in reliance on such contract, and thereby has changed his position so materially that to invoke the statute to deny the performer the benefit of the agreement would itself amount to a fraud. *Gegg v. Kiefer, supra,* at 837. To induce that favor of equity the performance must amount to cogent evidence of a contract to convey, the acts done must be in reliance upon the contract, the performance must so materially change the positions of the contractors that restitution becomes inadequate, and gross injustice may be avoided only by enforcement of the oral agreement. *Jackson v. Shain,* 619 S.W.2d 860, 862 (Mo.App.1981); *Gegg v. Kiefer, supra,* 655 S.W.2d at 839.

■ Applying these equitable principles to the case at bar, the court concludes that the trial court did not err by ordering the enforcement of the oral settlement agreement reached by Smith and Svetlic. In reliance on the agreement, respondent appeared before the trial judge in the underlying action, where it was announced that the parties had reached a settlement. As a result, respondent's suit was dismissed with prejudice. In addition, respondent's counsel prepared the necessary documents, consisting of a written settlement agreement, deed of trust, and promissory note, and these documents were signed by respondent. Thus, respondent took every reasonable step which he could to consummate the agreement. Insofar as appellant's performance led to the dismissal with prejudice of his underlying cause of action, his position has been so materially changed in reliance on the settlement agreement that gross injustice can only be avoided by enforcement of said agreement.

■ As her second point on appeal, appellant claims that the trial court erred in allowing Smith to testify concerning his representation of appellant in the underlying consolidated actions. Appellant argues that such testimony was a violation of the attorney-client privilege.

■ Pursuant to § 491.060, RSMo 1986, an attorney is incompetent to testify "concerning any communication made to him by his client in that relation, or his advice thereon, without consent of such client." However, under Missouri law, the attorney-client relationship is an agency relationship governed by the same rules which apply to other agencies. Generally the fact or scope of agency cannot be established by extra judicial admissions, but, that rule does not extend to the sworn testimony of the alleged agent. An agent may testify both as to the fact and to the nature and extent of his authority, where it rests in parol. *Southwestern Bell Telephone Co. v. Roussin,* 534 S.W.2d 273, 276 (Mo.App.1976).

■ Smith could testify about the nature and extent of his authority to enter into the settlement agreement in the case at bar without implicating the doctrine of attorney-client privilege. An attorney can testify as to his authority to settle, since such communication is not within the pale of protection of the privilege. *Aritex Land Co. v. Baker,* 14 Ariz.App. 266, 482 P.2d 875, 886 (1971); 97 C.J.S. Witnesses § 287. The authority of the attorney, like that of any agent, may be established by the attorney and his testimony in that regard is admissible to prove the agency and the nature and scope of his authority to sign the agreement in question. *Pacific Telephone and Telegraph Co. v. Fink,* 141 Cal.App.2d 332, 296 P.2d 843, 845 (1956); *Southwestern Bell, supra,* at 276–77.

■ Even if Smith's testimony concerning the settlement agreement was covered by the attorney-client privilege, it is noted that the privilege may be waived by the client. *Pipes v. Sevier,* 694 S.W.2d 918, 924 (Mo.App.1985). A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication in issue. *Jakobleff v. Cerrato, Sweeney and Cohn,* 97 A.D.2d 834, 468 N.Y.S.2d 895, 897 (App. 1983).

In the case at bar, appellant clearly placed the subject matter of the privileged communication in issue by claiming, in her amended answer, that the two attorneys "concocted" the settlement agreement

without her consent or authorization. Consequently, she waived the attorney-client privilege and the trial court did not err in allowing Smith to testify concerning his representation. As the Florida Court of Appeals has noted, "[n]o court should countenance an announced settlement between counsel followed by escape therefrom, if one side arbitrarily reneges and then seals his counsel's lips by invoking the attorney-client privilege." *Hamilton v. Hamilton Steel Corp.*, 409 So.2d 1111, 1114 (Fla.App. 1982). The client cannot have it both ways: she cannot take advantage of the dismissal with prejudice signed by her attorney while at the same time denying the lawyer's authority to negotiate a settlement.

Accordingly, the judgment of the trial court is affirmed.