**Julius and Lois SCHMIDT, Respondents,**

v.

**Tracy WHITE, Appellant,**

**Debbie White, Plaintiff.**

**No. WD 58488.**

Missouri Court of Appeals, Western District.

March 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2001.

Norris W. Phillips, Milan, for appellant.

John L. Young, Princeton, for respondent.

Before ULRICH, P.J., ELLIS and EDWIN H. SMITH, JJ.

ULRICH, Judge.

Tracy White appeals the judgment of the trial court enforcing the settlement

agreement between him and Debbie White and Julius and Lois Schmidt. Mr. White contends that the settlement agreement is unenforceable because it violates the Statute of Frauds, in that, the attorney who entered into the settlement agreement on Mr. White's behalf did not have written authorization to do so. Mr. White further contends that the trial court erred in failing to sustain his Motion for Directed Verdict on the petition for specific performance of the original real estate contract at the close of the Schmidts' evidence because the Statute of Frauds requires that a contract for the sale of lands must be in writing and signed by the parties to be charged and no written contract between the parties was ever introduced into evidence. The judgment of the trial court enforcing the settlement agreement between the parties is reversed.

## I. Facts

On February 11, 1997, Mr. White signed a listing agreement with Earl Ragan, a licensed real estate broker, concerning the sale of 231 acres of real estate owned by the Whites. Mr. Ragan advertised the property in the Kansas City Star. The Schmidts saw the advertisement in the paper and contacted Mr. Ragan who showed the property to them. After seeing the property, the Schmidts made an offer equal to the listing price but no written contract between the parties was ever executed.

On February 27, 1998, the Schmidts filed a petition seeking specific performance of the alleged real estate contract. The matter was set for trial on December 29, 1998. In the interim, Mr. White's attorney and the attorney for the Schmidts began communications regarding a possible settlement of the case before trial. The attorneys for the parties negotiated a settlement through written letters to each other, which were also carbon copied to the parties. On December 15, 1998, the Schmidts' attorney informed the court that the parties had settled and that the December 29, 1998, scheduled hearing on the matter would no longer be needed.

The alleged settlement agreement provided that the Whites would transfer title of the property to the Schmidts in exchange for the sum of $94,000.00. The closing on the property was scheduled for February 22, 1999. On that date, Mr. White refused to proceed with the closing. The Schmidts then filed a Motion to Enforce Settlement. The Motion to Enforce Settlement was combined at trial with the suit for specific performance. After a hearing on the issues, the trial court entered its judgment granting the Schmidts' Motion to Enforce Settlement and ordering Mr. White to execute a warranty deed on the property and all necessary documents to complete the transfer of the real estate in accordance with the alleged settlement agreement. This appeal followed.

## II. Standard of Review

The standard of review of a court-tried case is established by Rule 73.01(c). As interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), that rule requires that a judgment be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

## III. Motion to Enforce Settlement

■ In his first point on appeal, Mr. White contends that the trial court erred in granting the Schmidts' Motion to Enforce Settlement because the settlement agreement violates the Statute of Frauds. Specifically, Mr. White argues that the Statute of Frauds requires that his attorney, as his agent, must have had written

authorization to enter into the settlement agreement for the sale of real estate in order to bind him, as the principal, to that real estate contract.

■ The Statute of Frauds provides that "[n]o action shall be brought ... to charge any person ... upon any contract made for the sale of lands ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized." § 432.010, RSMo 2000. A compromise settlement is a species of contract and, therefore, is governed by contract law. *Sappington v. Miller,* 821 S.W.2d 901, 903 (Mo.App. W.D.1992). Thus, a settlement contract must be in writing if the subject matter of the compromise falls within the Statute of Frauds. *Jackson v. Shain,* 619 S.W.2d 860, 862 (Mo.App. W.D. 1981). The intended effect of the compromise settlement determines whether the statute of frauds applies. *Sappington,* 821 S.W.2d at 903. In this case, the intended effect of the settlement agreement was that Mr. White would convey his interest in the real estate to the Schmidts in exchange for $94,000.00. This transaction is governed by the terms of the Statute of Frauds.

■ The Statute of Frauds further provides that "no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." § 432.010, RSMo 2000. And under Missouri law, the attorney-client relationship, as in this case, is an agency relationship governed by the same rules that apply to other agencies. *Sappington,* 821 S.W.2d at 904. Accordingly, Mr. White's attorney must have had written authorization to enter into the settlement agreement, which

he did not. The agreement, therefore, violates the Statute of Frauds.

■ Despite the strict provisions of the Statute of Frauds, equity will enforce an oral contract for the sale of real estate if one party has partially performed or has done other acts in reliance on the contract, and thereby has changed his position so materially that gross injustice can only be avoided by enforcement of the contract. *Id.* at 903–904. In applying this equitable principle to the facts, the *Sappington* court noted that the purchaser, relying on the oral settlement agreement to convey real property, appeared by counsel before the court where the suit for specific performance was pending and announced that the parties had reached a settlement. *Id.* at 904. The suit was, therefore, dismissed with prejudice. *Id.* Purchaser/Respondent's counsel prepared the necessary written settlement agreement, deed of trust and promissory note, and the purchaser signed the documents. *Id.* The court determined that, "[i]nsofar as appellant's performance led to the dismissal with prejudice of his underlying cause of action, his position has been so materially changed in reliance on the settlement agreement that gross injustice can only be avoided by enforcement of said agreement." *Id.*

■ In the instant case, the only loss the Schmidts incurred, was the benefit of the bargain, if any. The Schmidts' did obtain a loan for $50,000 at 9% interest to purchase the property. The loan was to be secured by the property, however, and, although the record does not specifically state, a reasonable inference, absent evidence to the contrary, is that the failure to close on the property negated the loan. Moreover, unlike *Sappington,* where the settlement agreement led to the dismissal of the underlying action with prejudice, the Schmidts' underlying specific performance

action was never dismissed. The Schmidts' position has not been so materially changed so as to cause gross injustice. The trial court erred in granting the Schmidts' Motion to Enforce Settlement. The settlement agreement entered into by the parties' attorneys is unenforceable against Mr. White.

Because the trial court erroneously declared or erroneously applied the law, Point I is granted.

## IV. Motion for Directed Verdict

■ Tracy White asserts as his second point that the trial court erred in not sustaining his motion for directed verdict at the close of the plaintiff's case on the underlying suit for specific performance because the Statute of Frauds requires a written contract to sell real property and the evidence demonstrated that no written contract to sell the disputed property existed. The trial court conducted the evidentiary hearing on both the motion to enforce the settlement and the underlying petition for specific performance on the claimed contract to sell real estate. The court's judgment granted the motion to compel the settlement but did not address the underlying petition seeking specific performance.

■ No judgment on point II exists from which an appeal can be taken. This court lacks jurisdiction to address the second point. Although the issue of finality was not raised, the finality of a judgment is a jurisdictional prerequisite and the court has a duty, *sua sponte*, to determine its jurisdiction. *Spauldin v. Spauldin*, 945 S.W.2d 665, 668 (Mo.App. W.D.1997). The right of appeal, which is statutory, is declared in section 512.020, which provides, in pertinent part, "[a]ny party to a suit ... may take his appeal to a court having appellate jurisdiction ... after final judgment in the cause...." § 512.020, RSMo

2000. Thus, "[a] prerequisite to appellate review is that there be a final judgment." *Clay County ex rel. County Comm'n of Clay County v. Harley and Susie Bogue, Inc.*, 988 S.W.2d 102, 108 (Mo.App. W.D. 1999). If the judgment is not final, this court is without jurisdiction and must dismiss the appeal. *Spauldin*, 945 S.W.2d at 668.

In this case, although the trial court certified its judgment to enforce the settlement as final, understanding that it resolved the suit if affirmed, the specific performance claim on the underlying claimed contract to sell real property is yet unresolved. Because the trial court judgment was to effect the purported settlement agreement, the trial court's judgment does not include granting or denying the prayer of the underlying petition for specific performance. Thus, no final judgment on the Schmidts' petition for specific performance exists from which to appeal. Accordingly, the appeal as to the underlying claimed contract to sell real property is premature until the trial court enters a final judgment on the issue. Because no final judgment has been entered as to the claimed contract this court is without jurisdiction to consider the issue raised in Mr. White's second point. Mr. White's second point is, therefore, dismissed.

The judgment of the trial court enforcing the settlement agreement between the parties is reversed.

ELLIS and EDWIN H. SMITH, JJ., concur.