**STATE of Missouri, ex rel. CHASE RESORTS, INC., Relator,**

v.

**The Honorable Robert Lee CAMPBELL, Judge of the Circuit Court of the County of St. Louis, Respondent.**

No. 68608.

Missouri Court of Appeals,
Eastern District,
Division Six.

Nov. 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1996.

Application to Transfer Denied
Feb. 20, 1996.

Francis G. Slay, Mary Ann Ohms, St. Louis, for appellant.

Russell F. Watters, Robert William Cockerham, T. Michael Ward, St. Louis, for respondent.

CRAHAN, Judge.

In *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145 (Mo.App.1993) ("*Chase I*"), we remanded the underlying action for a determination of the amount of legal fees incurred by Chase Resorts ("Relator") in defense of a personal injury action brought by Mr. and Mrs. Kramer (the *Kramer* litigation). We held that Safety Mutual Casualty Corporation ("Safety Mutual") was obligated to pay these fees pursuant to the express terms of its excess liability policy. Relator now seeks a writ of prohibition restraining Respondent from conducting a jury trial to determine the amount of fees owed by Safety Mutual and from enforcing his order requiring Relator to produce its entire legal file in the personal injury litigation sought by Safety Mutual in discovery. We order that our

preliminary writ heretofore issued now be made absolute.

Relator owns the Lodge of the Four Seasons, which operated a marina located at the Lake of the Ozarks. In February 1984, a boat dock at the marina collapsed causing injuries to Mr. and Mrs. Kramer. The Kramers brought a personal injury claim against Relator. Relator was insured under a comprehensive general liability insurance policy issued by North–West Insurance Company and under a commercial umbrella liability policy issued by Safety Mutual. The Safety Mutual policy provided excess liability coverage over $500,000 up to a limit of $5,000,000 in excess of the underlying coverage provided by North–West.

During the pendency of the *Kramer* case, North–West was declared insolvent and was unable to provide the defense. After a brief time in which Relator paid for its own defense, the Missouri Property and Casualty Insurance Guaranty Association ("MIGA") provided for the defense pursuant to § 375.785.4(a), (b) RSMo. Cum.Supp.1984 (Repealed L.1989 S.B. 333 § A). A jury verdict of $700,000 for the Kramers was appealed. *Kramer v. Chase Resorts, Inc.*, 777 S.W.2d 647 (Mo.App.1989). On remand the case was retried to determine the Kramer's percentage of fault, which was found to be zero, thus leaving the prior judgment unchanged. The judgment was satisfied through payments from Relator and Safety Mutual.

On July 30, 1990, Relator filed a declaratory judgment action seeking, among other relief, a declaration as to its right to recover legal fees and costs of $132,508.55 allegedly incurred in defense of the *Kramer* litigation from MIGA and Safety Mutual. Relator settled its claim against MIGA in July 1991. Respondent entered summary judgment for Safety Mutual, and Relator appealed.

On appeal, we found that "Safety Mutual's definition for 'Ultimate Net Loss' provides that 'Ultimate Net Loss' means the total sum insured becomes obligated to pay by reason of liability claims, including law costs, premiums on attachment or appeal bonds, and expenses for lawyers and for litigation." *Chase I* at 151. Based on this policy language, we held that "Safety Mutual has a duty to pay appellant's [Relator's] remaining legal fees for [the *Kramer* litigation]." *Id.* at 152. We therefore reversed the judgment in favor of Safety Mutual and remanded for a determination of the amount of legal fees incurred by Relator in the *Kramer* litigation.

On remand, Safety Mutual filed a demand for trial by jury on the issue of the legal fees. Safety Mutual also served a subpoena duces tecum wherein Safety Mutual sought what amounts to Relator's entire legal file on the *Kramer* litigation. Relator produced copies of legal bills itemized by date, services performed, hours, attorneys performing such services and amount charged, as well as spreadsheets related to the *Kramer* litigation. It also filed objections to the subpoena duces tecum on the grounds, among others, that Safety Mutual's request for "all other documents and records related to any and all legal services provided ..." was overbroad and called for irrelevant and immaterial information, and would require the production of documents protected by the attorney-client and work product privileges.

Safety Mutual later filed a supplemental request for production of documents followed by a motion to compel production of the documents it had subpoenaed in July 1994. The motion sought production of the entire file of counsel for Relator including the legal research file, internal memoranda, attorney notes, correspondence file, and any additional documents contained within the law firm's *Kramer* case file. Counsel for Relator filed suggestions in opposition to the motion to compel production of the documents, as well as a motion to strike Safety Mutual's jury demand. Following a hearing, Respondent entered an order sustaining Safety Mutual's motion to compel. Relator was ordered to produce the legal file within ten days. Respondent also indicated his intention to set the case for a jury trial. Relator then sought and obtained our preliminary writ of prohibition.

Relator maintains that Respondent has no discretion to order a jury trial to determine the reasonableness of the legal fees it incurred in defense of the *Kramer* litigation

because (1) the language of the policy is absolute and thus permits no inquiry into the reasonableness of the fees incurred and, (2) even if reasonableness is in issue, the reasonableness of attorney's fees is a question of law to be determined by the court and not by a jury. We reject the former contention and sustain the latter.

■ Although the policy does not expressly limit Relator's reimbursement to fees reasonably incurred, "[a]n attorney is only entitled to fees which are fair and just and which adequately compensate him for his services." *Terminal Railroad Ass'n of St. Louis v. Schmidt,* 353 Mo. 79, 182 S.W.2d 79, 82 (1944); *see also Scheufler v. Continental Life Ins. Co.,* 350 Mo. 886, 169 S.W.2d 359, 363 (1943). This is true no matter what fee is specified in the contract, because an attorney, as a fiduciary, cannot bind his client to pay a greater compensation for his services than the attorney would have the right to demand if no contract had been made. *See Kiser v. Miller,* 364 F.Supp. 1311, 1319 (D.D.C.1973) *(aff'd in part, rev'd in part on other grounds, Kiser v. Huge,* 517 F.2d 1237 (D.C.Cir.1974)). Therefore, as a matter of public policy, reasonableness is an implied term in every contract for attorney's fees. If Relator could not lawfully contract with its attorneys for an unreasonable fee, it follows that Relator and Safety Mutual could not lawfully contract for reimbursement of more than a reasonable fee. Thus, Relator's contention that Safety Mutual is obligated to pay the "total sum" of its legal bills without an inquiry into their reasonableness is without merit.

■ This does not mean, however, that a jury trial is necessary or appropriate to determine the reasonableness of the legal fees incurred in the *Kramer* litigation. Once liability on a contract has been determined, damages in the form of attorney's fees permitted under the contract follow as a matter of law, and the trial court may calculate these amounts and enter judgment accordingly. *Campbell v. Kelley,* 719 S.W.2d 769, 772 (Mo. banc 1986); *Boatmen's Bank of Butler v. Berwald,* 752 S.W.2d 829, 834 (Mo.App.W.D.

1988). The trial court, as an expert on attorney's fees, may award reasonable amounts as a matter of law. *Campbell,* 719 S.W.2d at 772; *O'Brien v. B.L.C. Ins. Co.,* 768 S.W.2d 64, 71 (Mo. banc 1989); *American Bank of Princeton v. Stiles,* 731 S.W.2d 332, 339 (Mo. App.1987).

■ In *Chase I,* we determined that Safety Mutual has a duty to pay Chase Resorts' remaining legal fees for the underlying *Kramer* litigation. 869 S.W.2d at 152. Liability on the contract therefore has been determined, and the trial court may award reasonable attorney's fees as a matter of law. A jury trial on the issue is neither required nor appropriate.

Safety Mutual claims that it is nevertheless entitled to a jury trial based on Article I, Section 22 of the Missouri Constitution,[1] the Declaratory Judgment Act, and because factual disputes exist between Relator and Safety Mutual over the allocation and reasonableness of the legal fees claimed by Relator.

■ We reject the constitutional claim summarily because it is unsupported by any authority addressing the constitutional grounds asserted and because none of the cases cited by Safety Mutual establish that Missouri has ever recognized a common law right to a jury trial to determine the reasonableness of attorney's fees once liability therefor has been established. At best, Safety Mutual's cases suggest that a jury trial is in order where the issue of liability is submitted to the jury and attorney's fees are an element of allowable damages. *See, e.g., O'Neil Lumber Company v. Allied Builders Corporation,* 663 S.W.2d 326, 331 (Mo.App. 1983) (jury assessed attorney's fees for collateral litigation caused by defendant's conduct); *Forsythe v. Starnes,* 554 S.W.2d 100, 111 (Mo.App.1977) (same); *Grandview Bank & Trust Co. v. Midwest Plastering, Inc.,* 633 S.W.2d 259, 261–62 (Mo.App.1982) (suit to establish individual liability on guaranty; evidence held insufficient to establish reasonableness of fees); *See also Halamicek Brothers, Inc. v. R & E Asphalt Service, Inc.,* 737 S.W.2d 193, 197 (Mo.App.1987) (jury as-

1. Article I, Section 22 of the Missouri Constitution provides, in pertinent part: "The right of trial by jury as heretofore enjoyed shall remain inviolate...."

sessed damages for breach of contract, including attorney's fees; no discussion of right to jury trial). In the absence of any authority that Missouri has recognized a common law right to a jury trial to determine reasonable attorney's fees once liability has been established, we find no violation of Article I, Section 22 of the Missouri Constitution. *See also Cheek v. McGowan Elec. Supply Co.,* 511 So.2d 977, 979 (Fla.1987) (rejecting contention that comparable provision of Florida Constitution established a right to jury trial for determination of reasonable attorney's fees).

■ Nor do we find any right to a jury trial in these circumstances by reason of the Declaratory Judgment Act, § 527.090, RSMo 1994, which provides:

> When a proceeding under sections 527.010 to 527.130 involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

As discussed above, once liability therefor has been established, the reasonableness of attorney's fees is a question of law, not a question of fact. Particularly instructive in this regard is *American Bank of Princeton v. Stiles, supra.* In that case, the court held that even if a defendant files affidavits challenging the reasonableness of attorney's fees, this does not create a genuine issue of material fact precluding summary judgment. 731 S.W.2d at 339. *A fortiori* it does not create an issue of fact necessitating a trial by jury.

Safety Mutual urges, however, that discovery to date has yielded information suggesting that Relator has included in its claim amounts attributable to legal advice on coverage issues and not just expenses attributable to the defense of the *Kramer* litigation. Thus, Safety Mutual argues, there is a question of fact concerning the proper allocation of attorney's fees which is sufficient to remove this case from the ambit of the general rule that the reasonableness of attorney's fees is a question of law to be decided by the court. Relator counters that the question of whether it is entitled to claim reimbursement for advice about coverage issues has not yet

been decided and, even if reimbursement is limited to litigation expenses, proper allocation of the fees claimed is still a matter to be decided by the court.

We find that the issue of whether Relator is entitled to reimbursement for advice concerning coverage as opposed to litigation defense costs was decided in *Chase I.* In *Chase I,* we specifically held that "Safety Mutual has a duty to pay [Relator's] remaining legal fees *for the underlying litigation.*" 869 S.W.2d at 162 (emphasis added). Nothing in the opinion can fairly be read as suggesting that Relator's right to reimbursement under the contract extends to anything other than legal fees incurred in defense of the *Kramer* litigation. To the extent that Relator is now attempting to assert that it is also entitled to reimbursement for legal fees pertaining to coverage issues, it comes too late. If Relator believed it was entitled to reimbursement for these matters, the time to raise the issue was in *Chase I,* which established the scope of remand. As the language quoted above indicates, Relator is only entitled to reimbursement for legal fees incurred in defense of the underlying litigation.

■ We disagree, however, that the necessity of limiting Relator's reimbursement to fees and expenses incurred in the *Kramer* litigation somehow transforms the issue on remand into a jury issue. Indeed, as the cases cited by Safety Mutual recognize, it will be Relator's burden on remand to properly segregate and allocate fees attributable to the *Kramer* litigation and a failure to do so may serve as a basis for denial of recovery altogether. *See, e.g., Funding Systems Leasing Corp. v. King Louie Int'l, Inc.,* 597 S.W.2d 624 (Mo.App.1979); *Witt v. Austin,* 806 S.W.2d 63 (Mo.App.1991); *Hibbs v. Jeep Corp.,* 666 S.W.2d 792, 799–800 (Mo.App. 1984). In neither *Funding Systems* nor *Hibbs,* however, was the claim for fees submitted to a jury. Although *Witt* did order a remand for a new trial on all issues including attorney's fees, the reason was that the plaintiff's right to reimbursement, if any, was held to be limited by whatever the jury found to be the defendants' percentages of fault. We find nothing in any of these cases which

would justify a departure from the general rule that the determination of the amount of fees for which Relator is entitled to reimbursement is a question of law to be decided by the court, not a jury.

■ Issuance of a Writ of Prohibition is generally the appropriate remedy to forestall unwarranted and useless litigation. *State ex rel. Police Retirement System of St. Louis v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994); *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 500 (Mo.App.1985). To require Chase Resorts to submit its bills, invoices and paid receipts to a jury when the issues are solely a matter of law would lead to unwarranted and useless litigation, therefore, prohibition is proper in this case. Respondent, as a matter of law, can calculate the reasonable amounts and allocation of attorneys' fees Safety Mutual is obligated to pay under the contract and enter judgment accordingly. See *Campbell,* 719 S.W.2d at 772.

In its second point, Relator urges that Respondent abused his discretion in ordering production of the entire legal file in the *Kramer* litigation. Relator asserts that the legal file contains material protected by the attorney-client and work product privileges and that the materials are not relevant to the issue to be decided by the court—*i.e.,* the reasonableness of its attorney's fees. Safety Mutual does not dispute the privileged nature of the subpoenaed materials but argues that the privilege has been waived by virtue of Relator's assertion of its claim for reimbursement of fees. Safety Mutual also asserts that the materials are relevant and probative on the issues of whether the legal work was actually performed and whether the charges for the work are reasonable.[2]

■ We find no waiver of the attorney-client privilege.[3] Safety Mutual correct-

ly urges that anticipatory waiver of the attorney-client privilege may occur where the client places the subject matter of the privileged communication in issue in the litigation. *Sappington v. Miller,* 821 S.W.2d 901, 904 (Mo.App.1992). Most commonly, waiver may be invoked where proof of the elements of a party's claim will necessarily entail proof of the contents of an attorney-client communication, such as a claim of reliance on legal advice as an element of a claim or defense. *See Remington Arms Co. v. Liberty Mut. Ins. Co.,* 142 F.R.D. 408, 411–16 (D.Del.1992). In this case, however, Safety Mutual has failed to articulate any reason why Relator would need to prove the content of its attorney's legal advice in order to establish the reasonableness of its attorney's fees, nor does Missouri case law suggest that there is any such requirement. Because the trial court is an expert on attorney's fees, it "does not require any evidence or other opinion as to their value." *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness, Inc.,* 884 S.W.2d 733, 740 (Mo.App.1994). Fee awards have been routinely affirmed as reasonable based on attorney affidavits as to hours and services and oral testimony as to the charges made, received and paid. *See, e.g., Gorman v. Cornwell Quality Tools,* 752 S.W.2d 844, 847 (Mo.App.1988); *Davis v. Stewart Title Guaranty Co.,* 726 S.W.2d 839, 852–53 (Mo. App.1987); *cf. Hibbs v. Jeep Corp.,* 666 S.W.2d 792 (Mo.App.1984). The fact that Safety Mutual may find the information helpful in cross-examination does not justify a finding of waiver. *Remington Arms Co.,* 142 F.R.D. at 415. We hold that the filing of a claim for reasonable attorney's fees pursuant to the terms of a contract does not result in an anticipatory waiver of any privileges that would otherwise be applicable to documents in the legal file.[4]

---

2. At oral argument, Safety Mutual stated that production of the legal file would facilitate expert testimony on such matters as whether preparation of a particular memorandum would reasonably require the amount of time billed. Counsel conceded, however, that such testimony would be of minimal, if any, value if the issue were tried to the court rather than a jury.

3. For the sake of convenience, we address the waiver issue in the context of the attorney-client

privilege, as did Safety Mutual in its brief. We have not been cited nor have we discovered any authority suggesting a different waiver analysis for the work product privilege.

4. We find *Potomac Electric Power Co. v. California Union Ins. Co.,* 136 F.R.D. 1 (D.D.C.1990), cited by Safety Mutual to be unpersuasive. Although the court in that case ordered production of the legal file in arguably comparable circumstances, it failed to consider the cogent policy

Absent a waiver, privileged materials are immune from discovery. Rule 56.01(b)(1); *Board of Registration for the Healing Arts v. Spinden*, 798 S.W.2d 472, 475 (Mo.App.1990). Application of the attorney-client privilege is a matter of law, not judicial discretion, and is properly a matter for prohibition. *State ex rel. McBride v. Dalton*, 834 S.W.2d 890, 891 (Mo.App.1992). Safety Mutual does not dispute that the subpoena would require the production of privileged documents and, as discussed above, we find no waiver. Accordingly, we hold that Relator is entitled to a writ prohibiting its enforcement.

For the foregoing reasons, we order that our preliminary writ heretofore issued be made absolute. Respondent is ordered to refrain from submitting Relator's claim for fees to a jury and is prohibited from ordering the production of Relator's legal file from the *Kramer* litigation.

RONNIE L. WHITE, Special Presiding Judge, and ROBERT G. DOWD, Jr., Judge, concur.

reasons why automatic waiver should be disfavored, which are discussed in admirable detail in

*Remington Arms, supra,* 142 F.R.D. at 411–16.